**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 2354 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| TARGET CORPORATION and | ) | |
| MGS GROUP, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff has filed what it terms a "renewed" motion to compel production of documents relating to the development of defendant's little stuffed rainbow poodle design. The motion dates back over two years, to March of 2019. [Dkt. #82].[1] For the following reasons, the plaintiff's "renewed" motion [Dkt. ##192,193] is denied.[2]

---

[1] The plaintiff was given until April 26, 2021 – fourteen days – in which to file its Reply Brief in this matter, but no brief was filed. Accordingly, the right to file a reply brief is deemed waived. Local Rule 78.3. *See also Britney S. v. Berryhill*, 366 F. Supp. 3d 1022, 1030 (N.D. Ill. 2019); *Hodel v. Aguirre*, 260 F. Supp. 2d 695, 696 n.2 (N.D. Ill. 2003).

[2] It should be noted that the plaintiff filed a motion – which I granted "without objection" [Dkt. #195] – to file much of its motion to compel under seal. The plaintiff claimed that the portions of the motion and supporting documents it was redacting were designated "Confidential" but never indicated why. As a result, words like "pink" or phrases such as "for example", "strategy documents", "line plans", "renderings or photographs", "line reviews" and similar innocuous words or phrases that could not rationally be argued to be confidential were redacted. Arguments and allegations were redacted as well: they included "she had no role in the search for, identification of, or collection of materials potentially responsive to Ty's specific requests" or "she herself made no effort to search her emails or any relevant Target system or database." Longer passages, page after page, with nothing in any way confidential about then, were given similar secretive treatment, from something like "including documents and emails reflecting the product development of the Accused Design showing a prior pink poodle that MGS presented to Target as a second round sample" to a summary of a *public* court hearing. [Dkt. ##192, at 9; 193, at 9].

But unfortunately, the Motion to Seal did not comport with applicable law on filing documents under
(continued...)

### A.

Despite the fondest hopes of the drafters of Local Rule 37.2, courts remain inundated with motions to compel discovery. Little wonder Judge Posner has lamented that discovery is the "bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000). All too many discovery motions are made overly dramatic. But while briefs often portray occurrences in an overly-dramatic light, most things are, in the end, not as portentous as one side or the other would have the court believe. So too with the instant motion.

It was originally filed by the plaintiff on March 29, 2019. [Dkt. #82]. The judge assigned to the case scheduled a hearing on the motion on April 3, 2019 but, instead, it was entered and continued. [Dkt. #84]. A discovery cutoff of June 4, 2019 was set. [Dkt. #84]. The motion had to be resolved before then. But when defense counsel asked about a briefing schedule for the motion, the court simply indicated they would be back in May for the next status hearing. [Dkt. #85, at 8-9].

---

[2](...continued)
seal. The federal courts are financed by the public and exist for the public good. Consequently, cases must be conducted in public to the maximum extent consistent with respecting trade secrets and other facts that should be held in confidence. *Matter of Hussain*, 866 F.3d 832, 835 (7th Cir. 2017)(a party hoping to seal documents must show good "reason to depart from the strong norm that judicial proceedings are open to public view."); *Hicklin Engineering L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 367 F. Supp. 3d 813, 816 (N.D. Ill. 2019). Closed proceedings breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980).

"The determination of good cause [to seal materials] cannot be elided by allowing the parties to seal whatever they want." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). A party hoping to file materials in secret must justify the claim of secrecy and "analyze the applicable legal criteria or contend that any document ... may ... legitimately may be kept from public inspection despite its importance to the resolution of the litigation." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002). Neither side has done that here. In hindsight, I improvidently granted the Motions to Seal. If the logic of the parties' positions were accepted, I think we would have to file this Opinion under seal if words like "pink" or "strategy document" or quotes and summaries from hearings are confidential. For example, the list, *infra*, was called confidential.

The status hearing in May, however, addressed other issues [Dkt. #93] and, as of June 26, 2019, the March 29, 2019 motion still had not been heard or even briefed. [Dkt. #102]. On August 23, 2019, the case was reassigned to a new judge [Dkt. #118], and shortly thereafter the parties reported that the motion remained pending. [Dkt. #120]. Still, oddly, the plaintiff didn't make much of the fact it had been put off for so very long, or indicate there was anything pressing about it. The second judge then referred the motion to a magistrate judge on October 25, 2019. [Dkt. #125]. Still, nothing happened with the motion and, about a month later, the assigned magistrate judge recused himself from the case. [Dkt. #130], and the referral then came to me, the fourth judicial officer assigned to the plaintiff's unbriefed, unargued, unheard motion. [Dkt. 131].

On December 9, 2019, I held what was the first hearing on the then 8-month-old motion. Essentially, it was the old bugaboo of "you must have more documents" with the response, "we can't produce what we don't have." Ultimately, the plaintiff agreed to withdraw the nine-month-old motion pursuant to the following language in my Order from that day:

> Plaintiff Ty Inc.'s Motion To Compel The Production Of Documents And Information 82 is hereby withdrawn without prejudice, and may be re-filed at a later date should circumstances require a refiling. At my request, counsel for the parties recessed and conferred on issues involved in the withdrawn discovery motion. Defendant is to file a Declaration regarding the production in light of plaintiff's express concerns. If deemed necessary, plaintiff can depose the declarant. The Declaration envisioned in our discussion today should be promptly filed. Documentation should be submitted to plaintiff by 12/31/19.

[Dkt. #135].

The Declaration I asked for – of Kelly Breuer – was timely filed. She explained that she had been the buyer for the division that purchased the accused little stuffed dogs and that any documents regarding them would have been sent or received over email or what she called "Grovesite." She

3

said she understood her team searched for both emails, while she reviewed those, and she believed they were complete and accurate. The team also took screenshots of Grovesite pages and produced those. Again, she reviewed them, and believed they were complete and accurate. She further explained that the little stuffed dog was a simple item that the defendant neither designed nor developed so there would not be a mass of documents relating to it as plaintiff seemed to think. Finally, she affirmed that to the extent they received anything related to it, it was produced in the emails and Grovesite documents. [Dkt. #136]. The Declaration was sufficient, and so one would assume that was that. It had taken several months, but the matter had finally been resolved.

On May 18, 2020, the parties reported they had completed fact discovery with the exception of two unspecified depositions. [Dkt.# 165, at 2]. As required by the Third Amended General Order [Dkt. #163, ¶. 5], they reported just two pending motions: a motion to issue a request to the Register of Copyrights and a motion for summary judgment. [Dkt. #165, Sec. 3]. The March 19, 2019 motion to compel had obviously been resolved by the Declaration. Due to Covid-19, there was no further status hearing until July 2, 2020, at which time the parties indicated that as fact discovery was completed, they were ready to undertake expert discovery, and they set an expert discovery schedule. [Dkt. #169].

As it turned out, the Order I entered back at the end of the previous decade had a flaw. While I had given a deadline for the defendant to file its declaration, I had unfortunately (and mistakenly) put no time limit on the plaintiff deposing the witness. Now, when judges enter Orders, they generally do so with the assumption that the parties will be operating with a modicum of good sense. Here, most people in any walk of life would understand that the words "[i]f deemed necessary, plaintiff can depose the declarant" does not mean the plaintiff may depose the declarant at any time

4

it gets around to it." Nor would most people similarly understand "may be re-filed at a later date." But, in substance, that's how the plaintiff read it.

Staggeringly, it was not until *January 6, 2021*, that plaintiff *first* indicated that it was unsatisfied with that declaration from *over a year ago* and wished to depose Ms. Breuer – again, she had been deposed on other topics once already. [Dkt. #188]. It couldn't (or shouldn't) have reasonably taken counsel a year to go over the Declaration. And yet, a deposition had not been scheduled. Counsel offered the generally valid explanation that the deposition had been delayed since December of 2019 due to difficulties resulting from the Covid-19 pandemic. [Dkt. #188, #189, at 5-6]. But, Covid-19 did not shut down the legal world for a year. Like all facets of life, the bar and the court adapted and soldiered on, after some initial errors and uncertainties.

So while some difficulties are understandable, others no longer are. The facts are these: Plaintiff had *three full months* to schedule the deposition before Covid shut-downs began in mid-March of 2020. The deposition ought to have been done in that window. Why delay what plaintiff had advertised as a brief, simple deposition until, as plaintiff concedes, March 29th? Why not January? February? Attorneys, who are so often wedded to a belt-and-suspenders approach, *Sterling National Bank v. Block*, 984 F.3d 1210, 1218 (7th Cir. 2021), do not account for contingencies, and as a result seek extensions of deadlines. In all too many cases a schedule is too often not taken seriously. But discovery schedules can be critical. *Brosted v. Unim Life Ins. Co. Of America,* 421 F.3d 459, 464 (7th Cir. 2005); *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996); *Tyson v. Ameritech*, 230 F.R.D. 538 (N.D.Ill. 2005). As it happened, there certainly were some here. But there weren't any from December 19, 2019 through mid-March, 2021, and there was no excuse for plaintiff to have

been so very lethargic once Ms. Breuer's Declaration had been filed. Parties who do not pay heed to Shakespeare's injunction – "Defer no time, delays have dangerous ends." Henry VI, Part I (1592) Act III, sc. ii 1.33 – imperil their own interests. Delay and tardiness may be among the surest ways to lose a case. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994).

Plaintiff was, and is, represented by no fewer than *six* attorneys from two large and sophisticated law Firms. One has offices in seven cities, with the Chicago office boasting 18 attorneys, 12 of them partners. The other Firm has offices in eighteen cities, with the Chicago office staffed by more than 60 lawyers. Surely, there would be no trouble setting up a remote deposition. While it cannot be said that they had been commonplace, the Federal Rules have allowed for depositions by remote means for years. Fed.R.Civ.P. 30(b)(4). They have become common place because of Covid. By the summer of last year, even sole practitioners in cases before me were routinely handling remote depositions and dealing with the glitches in the various platforms to which we have all become accustomed. But, plaintiff did not attempt to set up a remote deposition through July 2020. [Dkt. #189, at 8]. Thereafter, from all accounts, counsel apparently did nothing for another six months. [Dkt. #189, at 8]. Yet, I nevertheless allowed plaintiff an additional two months in which to depose Ms. Breuer – this time on her Declaration. [Dkt. #188]. Finally on February 12, 2021, fourteen months after they had received Ms. Breuer's Declaration, the deposition took place.

Not surprisingly, Ms. Breuer testified that it had been a legal team that had searched for emails and Grovesite documents. [Dkt. #193-1, Page 77, 86/140]. She personally searched One Drive on her computer. [Dkt. #193-1, Page 78/140]. She did not know the logistics of how the legal team conducted the search, but she was not a computer technician. [Dkt. #193-1, page 79/140]. She did not review any documents that had not been produced, but how would she understand relevance,

6

privilege, etc., as she was not an attorney.  She explained that the little toy was such a simple and item that there would not be a lot of development or designed involved.  [Dkt. #193-1, Page 85/140].  It was a little, three-dollar toy.  Total sales have only been about $116,000.

Then the questioning turned from the rainbow stuffed dog in the Complaint to whether there had been a search for "images reflecting dog sculptures similar to a *pink* poodle sculpture . . . ." [Dkt. #193-1, Page 88/140].  Ms. Breuer didn't recall any documents or searches related to that item.  Dkt. #193-1, Page 88-89/140].  She never saw any pink poodle document.  [Dkt. #193-1, Page 90/140].  She did understand that documents not relating to toy poodles would not need to have been produced.  Dkt. #193-1, Page 91/140].  She noted that there was a 30-day document retention that would sweep away emails from files. [Dkt. #193-1, Page 94-95/140].

Plaintiff makes much of the fact that Ms. Breuer's recollection was not crystal clear; that she repeatedly answered that she didn't have "a specific memory" or didn't recall seeing a specific document. [Dkt. #203, at 4-5].  That's not a surprise.  The document production plaintiff is complaining about occurred in the summer of 2018. The document search occurred before that. [Dkt. #82, at 2].  Memory is fallible, and fades over time, even regarding events that are extremely significant, like a murder or violent crime.  *See, e.g., Tabb v. Christianson*, 855 F.3d 757, 759 (7th Cir. 2017); *Samuel v. Frank*, 525 F.3d 566, 570 (7th Cir. 2008);  *Lynch v. SamataMason*, 279 F.3d 487, 490-91 (7th Cir. 2002); Brandon L. Garrett, *Judging Innocence*, 108 Colum. L.Rev. 55, 60 (2008).  Memories of events like searching for documents seem even more likely to fade after two years.  It is difficult that the responsibility for failing memory should be lay at the doorstep of a buyer in a toy department for whom a document search was peripheral at best to her responsibilities.  Given the way the issue was handled – or ignored – "blame" ought not to fall on the buyer. At least it is not

obvious that it should.

Plaintiff then renewed its two-year old Motion to Compel on March 21, 2021 – audaciously, given its delay. [Dkt. ##192, 193]. The motion ought to simply have been deemed untimely: fact discovery has long been closed, plaintiff has made no showing of any diligence in accomplishing the tasks leading to the renewal of its motion. Matters like this – matters like one side wanting some document the other side has long contended it doesn't have – are resolved within the boundaries of the court's discretion over discovery matters, which has been described as "broad," *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998), "substantial", *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc*., 755 F.3d 832, 839 (7th Cir. 2014); and "vast." See Charles Alan Wright, 2 Federal Practice and Procedure § 262 (4th ed. Oct. 2020 update). As such, the questions discovery motions ask are generally without "right" or "wrong" answers; they ask a court to "weigh incommensurables." *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 888 (7th Cir. 2020). *See also* Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1180–81 (1989)(explaining that, unlike rules, "totality of the circumstances" standards have "no single 'right' answer" and "[o]nly ... at the margins can an appellate judge say that [such a] determination must come out the other way as a matter of law"). Much can rightly affect discretionary decisions such as these, and equities and inequities can be balanced.

Certainly, the age of the motion – it's a toddler by now, albeit a zombie toddler – and plaintiff's lethargy are remarkable and give the impression that the issues discussed in them were never terribly important to plaintiff or counsel. Plaintiff didn't even report the discovery dispute as ongoing in the mandatory status report of May 18, 2020. Rule 26(b) mandates that discovery – which has become a runaway train, *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No.*

*130, U. A.*, 657 F.2d 890, 901 (7th Cir. 1981) – a monster on the loose, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986) – be throttled by the concept of "proportionality." Courts are required by the Federal Rules of Civil Procedure to look at discovery requests with an eye toward "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This case is about a little, three-dollar, stuffed dog toy and the defendant selling $116,000 worth of the little dogs; so the amount in controversy is certainly small. The plaintiff, well aware of how that sounds, suggests that money isn't everything. [Dkt. #203, at 8]. And money is what drives most civil litigation in this country. Hence, the abstract over-arching principles alluded to in the plaintiff's motion cannot decide this case. If it were otherwise, a party would simply need to invoke the majesty and importance of the copyright (or similar) act to ensure victory. But "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). According to plaintiff's motion, plaintiff has received at least a number of the types of documents it claims the defendant has from a third party. So, one must ask if dragging this out for two years, nearly all of that delay due to the plaintiff, is worth it. And, given how slowly plaintiff has moved over the last two years, one has to wonder if the discovery at issue is really significant at all?

But, as we said, that's perhaps not a true proportionality analysis; it's more a common-sense assessment of the renewed motion and all it has entailed, and the court won't rule on the motion on those bases; at least not alone. That is because what is truly striking about the Motion to Compel production is that, nowhere in the motion's fifteen pages does plaintiff point to any outstanding

discovery request that the documents it seeks would be responsive to. [Dkt. #193]. Even when challenged on this point, plaintiff's Reply Brief could not point to a document request. [Dkt. #203, at 6-7]. Such a motion should not be granted, especially after the plaintiff has had two years to draft a proper one that points the court to the discovery request that plaintiff claims has been ignored. *See, e.g., Africano v. Atrium Med. Corp.*, 2019 WL 10891868, at *2-3 (N.D. Ill. 2019)(motion denied where movant failed to show he specifically requested the documents at issue); *see also Musket Corp. v. Star Fuel of Oklahoma*, LLC, 2012 WL 2357407, at *2 (W.D. Okla. 2012); *Ice Corp. v. Hamilton Sundstrand Corp.*, 2010 WL 1284717, at *4 (D. Kan. 2010); *Hamilton v. Ford Motor Co.*, 2010 WL 11598083, at *3 (D. Wyo. 2010); *Sickler v. Curtis*, 2012 WL 1813521, at *1 (E.D. Cal. 2012).

And, of course, I ought not and cannot redraft plaintiff's motion to add references to some unspecified document requests. It is counsel's responsibility to direct the court to the grounds for granting a motion. As the Seventh Circuit has said time and again, it is not the court's job to unearth it on one side's behalf. *See Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . ."); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018); *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510–11 (7th Cir. 2010). The fact that plaintiff is unable or unwilling to direct the court to the discovery requests it feels have not been complied with is reason enough to deny the motion.

But, there is more. A little bit of playing "archaeologist" with the record – although not required, *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014) – serves to underscore the decision to deny the Motion to Compel. I have tried to figure out what document

10

request the plaintiff might be complaining about. While plaintiff's original motion was vague as to what requests the plaintiff felt the defendant had not fully complied with, it did indicate that the problems were Requests Nos. 4, 6, and 7. [Dkt. #82, at 6].

Request No. 4: All documents relating to the manufacture of Defendants' Work.

Request No. 6:All documents relating to the import or export of Defendants' Work from the state or country of origin.

Request No. 7: All documents relating to Your display or sale of Defendants' Work.

[Dkt. #82-3]. Importantly, the plaintiff's document request defined "defendant's work" as the "multi-colored plush toy" in paragraph 12 of the Complaint. That is a little, stuffed, rainbow-color-dappled dog. [Dkt. # 1, at 4; Par. 12]. It's not a pink poodle or a dog sculpture similar to the pink poodle. The requests were specific, and only certain documents – documents dealing with the little "multi-colored plush toy" poodle – were called for. Even after the plaintiff filed its first Amended Complaint on June 18, 2019, what it called the defendant's work, or the infringing work remained the same: – the "Knock-off Multi-Colored Plush Toy" – [Dkt. #97, at 5; Par. 15].

Plaintiff served "corrected" discovery requests on October 3, 2019. [Dkt. #156, at 4; ]. The "Defendant's work" was still defined as "the multi-colored plush toy product described in Paragraph 12 of the Complaint." [Dkt. #197-1, Page 9/29]. That was, of course, after the Complaint had been amended the preceding June; paragraph 12 was now about, not the defendant's work, but three of the *plaintiff's* copyrighted works. Confusing, to say the least and certainly not "corrected." In any event, giving plaintiff the benefit of the doubt, the relevant document request would then seem to be – recall that, plaintiff never identifies a document request in its motion – Request No. 15:

15. All documents referring or relating to any communications between MGS and

11

any third-party relating to the product design, development, and creation of Defendants' Work.

[Dkt. #197-1, Page 11/29]. But, clearly, the request was still about the "multi-colored plush toy" poodle or the "Knock-off Multi-Colored Plush Toy."

Compare these requests – which, again, were unearthed by the court, with assistance from the defendant, but no help from the plaintiff's brief – with the sweeping request plaintiff seems to think it made, and which it demands be enforced in its motion to compel:

documents relating to the development of Target's poodle design in this case (including the rainbow poodle and its predecessor pink poodle of similar three-dimensional design)(the "AccusedDesign"). This includes, for example:1) strategy documents; 2) emails with Carly Bosanko, creative director for Defendant MGS Group, Ltd. ("MGS"); 3) line plans; 4)renderings or photographs; 5)line reviews, and other documents related to the development of the Accused Design.

[Dkt. #193, at 1, 15].

These two requests have nothing in common. If those are the documents plaintiff wanted, it had several opportunities to actually ask for them. It never did, and the court cannot redraft the versions of documents requests the plaintiff served and supposedly corrected so the plaintiff can get what it now says it should have asked for in the first place. Drafting and editing discovery requests is not the court's job. *See, e.g., Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*, 2020 WL 6896090, at *3 (N.D. Ill. 2020); *Copeland v. C.A.A.I.R., Inc.*, 2020 WL 972754, at *5 (N.D. Okla. 2020); *Moskowitz v. Am. Sav. Bank, F.S.B.*, 2019 WL 7496775, at *3 (D. Haw. 2019); *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *5 (E.D.N.Y. 2017); *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2015 WL 13238450, at *4 (D. Nev. 2015); *Heim v. BNSF Ry. Co.*, 2014 WL 6949044, at *9 (D. Neb. 2014); *Medicis Pharm. Corp. v. Actavis Mid Atl. LLC*, 282 F.R.D. 395, 398

(D. Del. 2012); *Primm v. Aerofil Tech., Inc.*, 2012 WL 13102523, at n.4 (M.D. Fla. 2012); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2010 WL 502721, at *8 (D. Colo. 2010); *Dombach v. Allstate Ins. Co.*, 1998 WL 695998, at *7 (E.D. Pa. 1998). Indeed, it is patently unfair for the court to help one side to the detriment of the other. *United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011)("it is not a judge's job to assist one advocate at another's expense."); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001)(a court cannot "in practical effect, ... become[ ] the lawyer for the [plaintiff], performing the lawyer's duty....").

Given the history of this dispute and the allowances in terms of time that have already been made in favor of the plaintiff, the court ought not go further in that direction. The plaintiff failed to provide the court with a specific document request on which to base a ruling, and the court was unable to unearth one on its own. It is time, after two long years, for this motion finally to be interred. The renewed Motion to Compel [Dkt. ##192,193] is denied.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 5/11/21

13