UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TY INC., ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18-cv-02354 |
| v. ) | |
| ) | Judge Martha M. Pacold |
| TARGET CORPORATION and, ) | |
| MGS GROUP, LTD. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Ty Inc. filed suit against Target Corporation and MGS Group, Ltd. alleging copyright infringement of Ty's plush toy poodle, Rainbow. Target moved under 17 U.S.C. § 411(b)(2) for the court to issue a request to the Copyright Office to advise whether the Copyright Office would have refused registration if it knew that certain information included in the registration was inaccurate. [86]. For the reasons explained below, the court denies the motion.

## BACKGROUND

Ty is the owner and manufacturer of a line of plush toys sold under the trademark BEANIE BOOS. [97] ¶ 1.[1] In 2010, Ty registered a plush toy poodle with the United States Copyright Office, "C9962 Pink Poodle Boo" and sold the toy poodle under the name Princess. [99-1] at 5, 15.



In 2016, Ty registered another plush toy poodle with the Copyright Office, "Beanie Boos Patsy 37203," and sold the toy poodle under the name Patsy. *Id.* at 17. Ty asserts that Patsy's design featured a different type and color of material than

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

Princess, and "used a slightly different pattern, which permitted the dog more stability to sit upright." [99] at 2.



Later in 2016, Ty registered a third plush toy poodle with the United States Copyright Office, "37223 Beanie Boos Rainbow," and sold the toy poodle under the name Rainbow. [99-1] at 44. Rainbow resembles Patsy and Princess, but Ty asserts that Rainbow's design features a "different type and color of materials." [99] at 3.



On March 30, 2018, Ty filed an application for supplementary registration for the Patsy registration, clarifying that Patsy was a derivative work based on the Princess toy. [99-1] at 56. Ty identified "sculpture" under "Material excluded from this claim[,]" and "VAu1044341, 2010" (the registration number for Princess) under "Previous registration and year." *Id.* at 5, 56. Ty also identified "sculpture" as "New material included in the claim." *Id.* at 56. The Copyright Office issued a certificate of registration for Patsy. *Id.* at 59–62.

On March 30, 2018, Ty filed an application for supplementary registration for Rainbow, clarifying that Rainbow was a derivative work based on Patsy and Princess. *Id.* at 65. Ty identified "sculpture" under "Material excluded from this claim" and "VAu1044341, 2010" (Princess's registration number) and "VA0002018886, 2016" (Patsy's registration number) under "Previous registration and year." *Id.* at 5, 17, 65. Ty also listed "sculpture" under "New material included in the claim." *Id.* at 65. The Copyright Office issued a Certificate of Registration for Rainbow. *Id.* at 68.

2


# DISCUSSION

Target's motion argues that Ty made a series of knowingly false representations to the Copyright Office in order to obtain copyright registration for Rainbow. [94]. Target alleges that Rainbow is nothing more than a color variation on prior works and that variations in coloring are not copyrightable. Had the Copyright Office been aware of the true facts regarding Rainbow, Target argues, it would have refused to register Rainbow. Pursuant to 17 U.S.C. § 411(b)(2), Target asks that the court request the Register of Copyrights advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.[2]

After Target's motion was fully briefed, the parties filed supplemental briefs addressing a December 4, 2019 Copyright Office decision [153-1] ("*Robbins*"). [153]; [154].

The Copyright Act, subject to a few exceptions, requires a copyright holder to register its copyright in a work with the United States Copyright Office before bringing an infringement suit. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). 17 U.S.C. § 408(d) permits the Register of Copyrights to establish formal procedures "for the filing of an application for supplementary registration, to correct an error in a copyright registration or to amplify the information given in a registration." "The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration." *Id.*

17 U.S.C. § 409 requires that applications for copyright registration "be made on a form prescribed by the Register of Copyrights and shall include . . . (9) in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." The Compendium of U.S. Copyright Practices provides the following guidance for adding additional material covered by a copyright claim:

> When completing an online application, the applicant should identify the new authorship that the applicant intends to register on the Limitation of Claim screen by checking one or more of the boxes in the New Material Included field that accurately describe the new authorship that is owned by the copyright claimant. The options for each type of work are listed below . . . Works of the Visual Arts [:] 2-D

---

[2] Target also initially sought a stay pending the Copyright Office's response but dropped this request. *See* [104] at 3 (observing that there is not "any remaining need for a stay of the prior summary judgment deadline").

> artwork[,] Photograph[,] Jewelry design[,] Architectural work[,] Sculpture[,] Technical drawing [and] Map . . . .

U.S. Copyright Office, Compendium of U.S. Copyright Practices § 621.8(C)(1) (3d. ed. 2017). The Compendium clarifies that "[a]s a general rule, the U.S. Copyright Office will accept any of the terms listed above or any combination of these terms, provided that they accurately describe the copyrightable authorship being claimed." *Id.* The Compendium defines "sculpture" or "3-dimensional sculpture" as

> used to describe the authorship in a work of fine art. Likewise, they may be used to describe the authorship in toys, dolls, scale models, and other three-dimensional sculptural works. They also may be used to describe three-dimensional artwork that has been incorporated into a useful article, provided that the sculpture can be separated from the useful article.

*Id.* at § 618.4(C).

> 17 U.S.C. § 411(b) provides in relevant part:
>
> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless-- (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
>
> (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.
>
> Courts have interpreted § 411(b)(2) as a mandatory—not permissive—provision. *See DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623 (7th Cir. 2013) ("[T]he statute obligates courts to obtain an opinion from the Register . . . ."); *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) ("[C]ourts are in agreement that the provision is mandatory in nature . . . ."). But, although § 411(b)(2) is a mandatory condition to determining the materiality of a particular misrepresentation, courts have required litigants bringing § 411(b)(2) motions to meet certain preconditions before they refer a matter to the Register. The Seventh Circuit has held that "courts can demand that the party seeking invalidation first establish that the other preconditions to

4

invalidity are satisfied before obtaining the Register's advice on materiality." *DeliverMed Holdings*, 734 F.3d at 625. The Seventh Circuit set forth a two-part test for § 411(b)(2) motions. The movant should "demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office." *Id*. The Seventh Circuit explained that "[g]iven its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future." *Id*. The court noted the "risk that parties would use this provision as a delay tactic" and advised courts to "tread carefully and employ this mechanism only when necessary." *Id*.

Target alleges Rainbow's registration included three types of inaccuracies. First, Target claims Ty failed to disclose that Rainbow was a derivative work of Patsy and Princess. [94] at 4–5. Second, Target alleges that Ty failed to disclose that Rainbow's new material was previously used in a Ty plush toy owl. *Id*. at 6–7. Third, Target argues that Rainbow's registration inaccurately stated that it featured new "sculptural" material when Rainbow was "nothing more than a variation in coloring of" preexisting works. *Id*. The court addresses each argument in turn.

Target's first argument that Ty's application was inaccurate because it did not disclose that Rainbow was derivative of Patsy and Princess is unpersuasive. In 2016, when Ty registered the Rainbow poodle, it did not identify Rainbow as a derivative work. [99-1] at 45. But Ty's 2018 supplementary registration clarified that Rainbow was a derivative work based on Patsy and Princess. *Id.* at 65; *see also id*. at 5, 17. Ty followed an accepted procedure under 17 U.S.C. § 408(d), "to correct an error in a copyright registration" and did so before filing its infringement action in this case. *See also* [99-1] at 79; Compendium § 1802.6(J) ("A supplementary registration may be used to correct or amplify the claim that has been asserted in the basic registration. Specifically, it may be used to correct or amend the information that appears on the certification of registration in the fields/spaces marked Author Created, Limitation of Copyright Claim, Nature of Authorship, and/or Material Added to This Work.").[3] Taking into account the totality of Ty's representations to the Copyright Office, Ty's representations regarding Rainbow's relationship to Patsy and Princess are accurate.

Next, relying on the deposition testimony of Ty Warner, the CEO of Ty, Inc., Target contends that Rainbow's registration omitted reference to a Ty plush toy owl, which used the same colors and/or fabric. Target's opening brief states that Ty

---

[3] The "Limitation of Copyright Claim" includes space for the applicant to list the prior works, including "Material excluded from this claim" and the "Previous registration and year" for that material. *See* [99-1] at 65 (listing registration and years for Ty's Princess and Patsy products in its supplemental registration for Rainbow).

5

adopted the toy owl's colors, [94] at 6, but its reply brief indicates that Rainbow adopted its fabric, [104] at 1. Some of Warner's deposition testimony appears to suggest that Rainbow used the toy owl's colors. [94-1] at 40. But the court lacks any other evidence suggesting that Ty "based" Rainbow on the toy owl or "incorporated" the toy owl into its design. Further, Target has not demonstrated that, whatever the relationship between Rainbow and the toy owl, Ty was obligated to disclose it to the Copyright Office and Ty's failure to do so rendered its application inaccurate. Thus, the court cannot conclude that Ty's omission of the toy owl from Rainbow's registration makes the registration inaccurate.

Target's final argument also does not establish that Ty's application was inaccurate. Target alleges that Ty's supplemental registration is inaccurate because it claims that Rainbow contains new material, despite differing from preexisting works in color alone. Target points to Ty Warner's deposition testimony that he instructed Star Ace, Ty's manufacturer, to "use the colors" from a previous copyrighted toy owl and "apply that to Patsy." [94-1] at 40. But Ty cites to other deposition testimony that suggests that Ty used different colors *and* different types of fabric material. Warner testified that he "gave [Rainbow] different fabric. . . . [and] different colors." [94-1] at 28. Ty's Vice President of Management and Information Systems, Christopher Johnson, testified at his deposition that "the coloring is the—is the major difference, the material and the coloring." [94-1] at 69. Johnson also testified that Rainbow's "supplementary application introduces the new material and any of the changes" and that Ty filed the supplementary registration to identify Rainbow's "different material." *Id.* at 57–58. Given the Compendium's capacious definition of "sculpture," the court cannot conclude on the present record and briefing that Ty inaccurately described Rainbow's fabric and coloring changes as "sculpture" in its application. *See* Compendium § 618.4(C).

The Copyright Board's decision in *Robbins* does not suggest otherwise. In *Robbins*, the Copyright Office considered an applicant's second request for the registration of five three-dimensional sculptural works. [153-1]. The Copyright Office granted registration for three works, but denied registration for the other two. For "Bear Rug Claraloo Variation 16," the Board was "unconvinced that the change in faux fur color and texture is enough to render the Work a copyrightable derivative work." [153-1] at 9.

Although *Robbins* involves somewhat similar facts, it does not by itself dictate whether Rainbow's registration contains inaccuracies. First, *Robbins* and this case involve distinct questions. *Robbins* concerned whether a toy merited separate copyright registration. The relevant question here is the accuracy of Ty's representations in its application to register Rainbow. Undoubtedly these questions are related. But this case, unlike *Robbins*, involves § 411(b)(2), and the appropriate balance of "the Copyright Office's statutory right to weigh in on the materiality of a knowing misrepresentation in an application for copyright registration, on the one

6

hand, against the district court's 'inherent power to control its own docket and to prevent abuse in its proceedings,' on the other." *Palmer/Kane*, 188 F. Supp. 3d at 349. Mindful of the Seventh Circuit's instruction to "be wary of" § 411(b)(2) and to permit its use only "when necessary," the court concludes that Target has not shown that Ty's Rainbow registration was inaccurate. *DeliverMed*, 734 F.3d at 625.

Second, decisions like *Robbins* do not have precedential effect. "A decision issued by the Review Board has no precedential value, nor is any decision binding upon the Board in any other appeal." Compendium § 1704.2.

Finally, based on the present record, *Robbins* is factually distinguishable because Bear Rug Claraloo Variation 16 contained less substantial changes than Rainbow. The Copyright Office noted that Bear Rug Claraloo Variation 16's "single change" was its use of "grey 'plush minky fur'" instead of "white 'long exaggerated faux fur.'" [153-1] at 9. The Copyright Office also noted that "changing one color is not a copyrightable alternation." *Id.* (citing 37 C.F.R. § 202.1(a); Compendium of U.S. Copyright Practices § 906.3). Here, however, the record indicates that Rainbow utilized a variety of different colors and a fabric change. [99] at 2–3 (depicting "different type and color of materials" between Princess, Patsy, and Rainbow)). And as Warner described the evolution from Princess to Patsy to Rainbow during his deposition: "I gave it different fabric. All right. I gave it different colors . . . . Poodles aren't this color in real life. . . . Well, poodle[s] aren't -- you don't see poodles in rainbow colors. You see poodles, you know, black and white, you know, your standard dog, brown, apricot, right? But to see a rainbow colored poodle is something that only fantasy could dream up." [94-1] at 28. Ty characterizes Rainbow's design as an "idiosyncratic combination of uncommon colors on the ear tips, top of the head, upper body, tip of the tail, and feet, combined with shorter, light pink fabric on the remaining parts of the toy." [153] at 5.

Accordingly, Target has not shown that Ty's application contained any inaccuracies. The court therefore need not address whether Target demonstrated that Ty had knowledge of any inaccuracies.

## CONCLUSION

For these reasons, Target's motion is denied.

Date: September 21, 2022         /s/ Martha M. Pacold